AE

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: <br><br> PAUL A. WIRTH, <br><br> Debtor. <br><br> THOMAS B. SULLIVAN, Trustee, <br><br> Plaintiff/Appellee, <br><br> v. <br><br> MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., TAYLOR, BEAN & WHITAKER MORTGAGE CORP., AND GMAC MORTGAGE CORPORATION, <br><br> Defendants/Appellants. | No. 04 C 5677 <br><br> Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Debtor Paul A. Wirth owns a one-half interest in real estate located at 29411 S. Quigley Road, Manhattan, Illinois (the "Property"). Wirth's ex-wife, Marilyn Marcia Williams, owns the other one-half interest. The Property is encumbered by two mortgages signed by both Wirth and Williams: a February 27, 2001 mortgage held by Appellant Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Appellant Taylor, Bean & Whitaker Mortgage Corporation, and serviced by Appellant GMAC Mortgage Corporation; and a May 25, 2001 mortgage held by Countrywide Home Loans, Inc. ("Countrywide"). Only the MERS mortgage is at issue on appeal.

On February 19, 2002, Wirth filed a voluntary Chapter 7 bankruptcy petition. On December 8, 2003, Trustee Thomas B. Sullivan filed a complaint with the bankruptcy court seeking to sell Wirth's interest in the Property "free and clear of liens and interests," including the MERS and Countrywide mortgages. The bankruptcy court authorized the sale, finding that Wirth did not sign either mortgage as a "borrower" or "co-signer" and, thus, did not transfer his one-half interest to the mortgage companies. Appellants now appeal the bankruptcy court's July 9, 2004 decision

with respect to the MERS mortgage. For the reasons set forth here, the decision of the bankruptcy court is affirmed.

## BACKGROUND

On January 31, 2001, Paul L. Wirth conveyed the Manhattan, Illinois Property to Debtor and his then-wife, Marilyn Williams, by quitclaim deed.[1] *Sullivan v. Wirth*, Adversary Proceeding No. 03 A 4555 (July 9, 2004), at 2. At that time, Debtor and Williams each became owners of a one-half interest in the Property. On February 27, 2001, Wirth and Williams signed a mortgage on the Property with MERS, as nominee for Taylor, Bean & Whitaker. The mortgage defines the "Borrower" as "MARILYN MARCIA WILLIAMS, a single person," and states that "Borrower is the mortgagor under this Security Instrument." (MERS Mortgage, Ex. B to Appellants' Brief, at 1 ¶ (B).) Williams signed the mortgage above a line bearing her printed name and identifying her as "Borrower," and a notary legend attests that she appeared and signed the document. Wirth also signed on a line designated for a "Borrower," but his name is neither printed on the contract nor notarized. (*Id.*, at 14, 15.)

On May 25, 2001, Wirth and Williams signed a second mortgage on the Property, this time with Countrywide. The mortgage defines "Borrower" as "MARILYN MARCIA WILLIAMS, A SINGLE WOMAN," and Williams signed as "Mortgagor." (Countrywide Mortgage, Ex. C to Appellants' Brief, at 1, 5.) Wirth also signed above a signature line stating: "Paul Wirth Signing For the Sole Purpose of Waiving Homestead Rights." Both signatures were duly notarized. (*Id.* at 5.)

On February 19, 2002, Wirth voluntarily filed for bankruptcy under Chapter 7 of the Bankruptcy Code. *In re Wirth*, No. 02 B 6255. The appointed Trustee, Thomas Sullivan, subsequently filed a Complaint with the bankruptcy court seeking to sell Wirth's one-half interest in the Property free and clear of liens and interests. *Sullivan*, No. 03 A 4555. The Trustee

---

[1] The record does not specify the relationship between Paul L. Wirth and Paul A. Wirth; presumably they are father and son. The record also fails to indicate when Wirth and Williams got divorced; the court assumes it was sometime after Paul L. Wirth conveyed the Property to the couple.

2

presented a motion for summary judgment, arguing that the MERS and Countrywide mortgages attach only to Williams' one-half interest in the Property because she is identified as the sole "Borrower" in both documents. Williams, MERS, and Countrywide insisted that Wirth signed the mortgage as either a borrower or a co-signer, and that he transferred a security interest in the Property to the mortgage companies in one of those capacities.

Judge Bruce W. Black of the bankruptcy court agreed with the Trustee that Williams alone qualifies as a "Borrower" under the express terms of the mortgages. He noted that the MERS mortgage explicitly defines a "co-signer" as "any Borrower who co-signs this Security Instrument but does not execute the Note." (MERS Mortgage, at 10 ¶ 13.) Thus, the court reasoned, "[b]ecause Debtor is not identified as a Borrower under the MERS mortgage, he can not possibly be a co-signer." *Sullivan*, No. 03 A 4555, at 4. Wirth's signature on the mortgage was "insufficient to bind him" as a borrower or a co-signer, and the Trustee was authorized to sell Wirth's interest in the Property free and clear of the lien asserted by MERS. *Id.* at 4-5. The bankruptcy court stated, without elaboration, that "the same analysis applies" to the Countrywide mortgage, and observed further that "there is simply no reason to disregard the plain language limiting the effect of Debtor's signature to a waiver of his homestead rights." *Id.* at 5. MERS, Taylor, Bean & Whitaker, and GMAC now appeal this ruling.

## DISCUSSION

### I. Standard of Review and Jurisdiction

This court has subject matter jurisdiction over Appellants' appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1), which vests the district court with jurisdiction over appeals from "final judgments, orders and decrees" issued by the bankruptcy court. The district court functions as an appellate court when reviewing bankruptcy court decisions. *Bielecki v. Nettleton*, 183 B.R. 143, 145 (N.D. Ill. 1995) (citing FED. R. BANKR. P. 8013). In a bankruptcy appeal, the court examines the "bankruptcy court's factual findings for clear error and its legal conclusions *de novo*." *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994).

## II. The MERS Mortgage

Appellants insist that Wirth's signature on the MERS mortgage above a line designated for a "Borrower" suffices to convey to Appellants a security interest in his half of the Property. In Appellants' view, "[t]he Bankruptcy court's ruling makes the act of signing the mortgage meaningless," and "overlooks the clear intention of the parties and overlooks the obvious: no lender would loan $200,000 secured only by a half interest in the property." (Appellants' Brief, at 7.) The Trustee responds that the mortgage unambiguously defines "Borrower" as "MARILYN MARCIA WILLIAMS, a single person," and urges that "it is not the duty of the Court to rescue a lender that is less than prudent, or to give it the deal it might wish it had made." (Appellee's Brief, at 6, 7.)

It is well-established that a mortgagor may grant a lien only on the interest he holds in property. *See, e.g., Klein v. DeVries*, 309 Ill. App. 3d 271, 273, 722 N.E.2d 784, 787 (2d Dist. 1999) ("In general, a mortgagee can have no greater rights than his mortgagor."); *In re Estate of Vogel*, 291 Ill. App. 3d 1044, 1048, 684 N.E.2d 1035, 1038 (2d Dist. 1997) ("a joint tenant in real property may not mortgage unilaterally more than his own interest . . . .") There is no dispute that Williams mortgaged her share of the Property to MERS; the agreement expressly defines her as the "Borrower," and her signature in that capacity is notarized. Wirth, on the other hand, is neither defined as a "Borrower," nor is his signature in that purported capacity notarized. Appellants argue that the contract "must be construed as a whole, giving meaning and effect to every provision thereof, if possible, because it is assumed that every clause in the contract was inserted deliberately and for a purpose." *Platt v. Gateway Int'l Motorsports Corp.*, 351 Ill. App. 3d 326, 329, 813 N.E.2d 279, 282-83 (5th Dist. 2004). (*See also* Appellants' Brief, at 9.) If Wirth is not viewed as a borrower, Appellants contend, his signature becomes a nullity. "Clearly, Wirth would not put his signature to a mortgage document on a line that states 'Borrower' if his intent and the intent of the mortgage company was to not include his one-half interest in the property to secure the mortgage." (Appellants' Brief, at 9-10.)

4

Citing *FDIC v. Trans Pacific Indus., Inc.*, 14 F.3d 10 (5th Cir. 1994), the Trustee claims that "[t]he effect of a signature at the end of a document is controlled by the identification of the parties within that document." (Appellee's Brief, at 7.) In *FDIC*, the Federal Deposit Insurance Corporation ("FDIC") sought to enforce two promissory notes against Trans Pacific Industries, Inc. ("TPI") and TPI's board chairman, W.K. Robbins, who signed the notes. 14 F.3d at 11. The top left corner of each note identified TPI as the borrower, but the FDIC insisted that Robbins was personally liable because the notes did not show that he had signed in his representative capacity. *Id.* The court disagreed, noting that "[t]he face of the note[s] unambiguously shows that TPI was the sole borrower." *Id.* at 12. The FDIC "attempt[ed] to nullify the import of the identification block by arguing that the first sentence of the text–'The undersigned Borrower(s) . . . promises to pay'–renders each signatory a borrower." *Id.* In rejecting this argument, the court explained that

> [i]t is a basic tenet of contract interpretation . . . that one part of a writing cannot be read to nullify another. Interpreted in harmony with the identification block, the first sentence of the text must mean: TPI, which signs below, promises to pay . . . . The instrument therefore indicates on its face that TPI is the sole borrower and maker of the note.

*Id.*

Unlike the corporate representative in *FDIC*, Wirth could not have signed the mortgage on behalf of Williams. Thus, his signature on a line labeled "Borrower" cannot be reconciled so easily with the fact that Williams is the only "Borrower" identified in the mortgage. The Trustee directs the court to the Countrywide mortgage, in which Wirth made plain that he signed it solely to waive his homestead rights. (Appellee's Brief, at 7-8.) The MERS mortgage, in contrast, does not contain any similar language of disclaimer. All of this appears to be beside the point, however, because there is no indication that Wirth, whose name appears nowhere in the body of the mortgage, is a party to that agreement. To the contrary,

> [w]here a third party merely annexes his name to a contract in the body of which he is not mentioned, and which is a complete contract between other parties signing it and mentioned in it, such third person does not thereby become a party to the efficient and operative parts of the contract, his signature in such case being only an expression of assent to the act of the parties in making the contract.

5

*Harman Co. v. Kastor*, 202 Ill. App. 9, 1916 WL 2516 (1st Dist. 1916). *Harman*, though obviously dated, remains good law and directly supports the Trustee's position here. To the extent Wirth himself is not a party to the MERS mortgage, his intent in signing the agreement is irrelevant. *In re Pre-Press Graphics Co.*, 310 B.R. 893, 901 (Bankr. N.D. Ill. 2004) ("In interpreting contracts, the overriding concern is to give effect to the intent of the *parties*.") (emphasis added). Nor is Wirth's signature sufficient as a guarantee of Williams' debt, as posited by Appellants. (Appellants' Brief, at 10.) *See, e.g., Williams Nationalease, Ltd. v. Motter*, 271 Ill. App. 3d 594, 648 N.E.2d 614, 616 (4th Dist. 1995) ("A guaranty, like all contracts, must have definite terms . . . ."); *T.C.T. Bldg. Partnership v. Tandy Corp.*, 323 Ill. App. 3d 114, 118, 751 N.E.2d 135, 139 (1st Dist. 2001) ("guaranty contracts are to be strictly construed in favor of the guarantor.")

The bankruptcy court properly concluded that Wirth did not convey his one-half interest in the Property to Appellants as a borrower, co-signer, or guarantor, and that the Trustee may sell that interest free and clear of the MERS mortgage.

## CONCLUSION

For the reasons stated above, the bankruptcy court's order authorizing the Trustee to sell Wirth's one-half interest in the Property free and clear of the MERS lien is affirmed.

ENTER:

Dated: October 21, 2005

REBECCA R. PALLMEYER
United States District Judge